USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/8/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KIMMARIE NORMAN, Individually and on   :
Behalf of All Others Similarly Situated,   :
    :
    :  **REPORT**
    Plaintiff,   :  **& RECOMMENDATION**
    :
    :  22-CV-3173 (JLR) (JLC)
  -v.-   :
    :
THREE IN ONE EQUITIES, LLC,   :
    :
    Defendant.   :
------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Jennifer L. Rochon, United States District Judge:**

Plaintiff Kimmarie Norman brought this case alleging disability discrimination under federal, state, and local law based on of her inability to gain access to an Upper Manhattan deli grocery owned or operated by defendant Three In One Equities, LLC. She has moved for a default judgment as well as for injunctive relief, damages, attorney's fees, and costs. For the reasons set forth below, Norman's motion for default judgment should be granted. In addition, Norman's request for permanent injunctive relief should be granted, and she should be awarded damages, attorney's fees, and costs in the amount of $28,689.66.

## I. BACKGROUND

### A. Factual Background

The following facts are as alleged in Norman's Amended Complaint ("Am. Compl."), Dkt. No. 75, and, as defendant Three In One Equities, LLC ("Three In One") has not responded, are taken as admitted regarding the inquest into damages

1

considered in Section II.B.3 of this Report. *See, e.g., City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (citation omitted)); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))).

Norman is paralyzed and unable to walk, and thus relies on a wheelchair for mobility. Am. Compl. ¶ 27. She resides less than six blocks away from the property at issue. *Id.* ¶ 42.

Three In One owns or operates the public accommodation named 3 Star Deli Grocery ("deli"), located at 1045 Saint Nicholas Avenue, New York New York 10032 in Upper Manhattan. *Id.* ¶ 31. Three In One also owns or leases the commercial property which the deli occupies. *Id.* ¶ 30.

Beginning in July 2021, Norman attempted multiple times to visit Three In One's deli, but the following architectural barriers prevented her from entering: "[A]n 8-inch step to enter [the] [deli]" abutting "[a]n excessively steep ramp [without handrails or any other edge protection] . . . [that is only] 48 inches long," has a slope of 11.3 degrees, and also has "openings in the ground surface . . . more than ½ an inch in diameter"; a main entrance that does not have an abutting landing of any size, and which thus provides "no level maneuvering clearance to open the door";

2

and a "main entrance door [that] closes in two seconds and does not provide sufficient time to enter." *Id.* ¶¶ 35–36(j), 36(o). These barriers prevented Norman from entering the deli because operating her wheelchair requires a ramp with a slope that is not so steep as to cause it to tip over, as well as sufficient maneuvering clearance to use the entrance door. *Id.* ¶¶ 28–29. These architectural barriers exist despite the fact that since 1992, the "[deli] has undergone alterations" in areas affecting accessibility, including the "construction and accessibility alterations" Three In One made to the property on or after March 15, 2012. *Id.* ¶¶ 33–34. Norman is deterred from visiting the deli due to these accessibility barriers, and intends to return to the deli as soon as Three In One makes it accessible. *Id.* ¶¶ 44–46.

Norman brings these claims under Title III of the Americans With Disabilities Act ("ADA"), the New York State Civil Rights Law ("NYSCRL"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Am. Compl. ¶ 2.

## B. Procedural History

On April 18, 2022, Norman filed a complaint, individually and on behalf of all others similarly situated, against defendants Three In One Equities, LLC and 3 Star Deli Grocery Inc. ("3 Star"). Complaint, Dkt. No. 6. Defendants Three In One and 3 Star were issued summons electronically on April 20, 2022, Dkt. Nos. 9–10, and served by process server on April 26, 2022. Dkt. Nos. 47–48. An attorney, Katharine Smith Santos, Esq., entered a notice of appearance on behalf of Three In

3

One on June 20, 2022, Dkt. No. 16, and subsequently filed an answer and cross-claim against 3 Star on June 30, 2022.  Dkt. No. 21.

Santos moved to withdraw as counsel on February 16, 2023, having been terminated by Three In One.  Dkt. No. 42.  On February 17, the Court granted her motion and informed Three In One that, as a corporate entity, it could not proceed *pro se* as a matter of law.  Dkt. No. 43.

Norman gave notice of voluntary dismissal as to 3 Star on April 17, 2023.  Dkt. No. 60.  With permission from the Court, on June 14, 2023, Norman filed an amended complaint, dated June 1, 2023, naming Three in One as the sole defendant.  Am. Compl., Dkt No. 75.  The Court issued an amended e-summons to Three In One on July 10, 2023, Dkt. No. 78, and Norman subsequently served Three In One with the amended summons via process server on July 18, 2023.  Dkt. No. 79.  To date, Three In One has failed to file an answer or otherwise respond to the amended complaint.

On September 29, 2023, the Clerk entered a certificate of default as to Three In One.  Dkt. No. 82.  Norman then filed a motion for default judgment against Three In One, along with a request for a permanent injunction, damages, attorney's fees, and costs on October 2, 2023.  Dkt. No. 86.  In support of her motion, Norman filed a memorandum of law ("Pl. Mem."), Dkt. No. 87, and supporting declarations, Dkt. Nos. 88–89.  The same day,  the motion for default judgment was referred to me, as was an inquest into damages.  Dkt. No. 85.

4

## II.  DISCUSSION

### A.  Legal Standard

#### 1.  Default Judgment

"A default judgment may be awarded in accordance with Rule 55 of the Federal Rules of Civil Procedure 'when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend' against an action."  *Trs. of Sheet Metal Workers' Int'l Ass'n Local Union No. 28 Benefit Funds v. Maximum Metal Mfrs., Inc.*, No. 14-CV-2890 (JLC), 2015 WL 5771853, at *2 (S.D.N.Y. Oct. 2, 2015) (alteration omitted) (quoting Fed. R. Civ. P. 55(a)).  "Rule 55 sets forth a two-step process for the entry of a default judgment."  *Id.* (citing *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, No. 14-CV-7346 (KBF), 2015 WL 1508497, at *1 (S.D.N.Y. Apr. 1, 2015)).  "First, the movant must file an affidavit demonstrating that the party against whom default judgment is sought has been properly served and has failed to defend, upon which the clerk of the court enters the party's default into the record."  *Id.* (citing *Rovio Entm't, Ltd.*, 2015 WL 1508497, at *1).  "Second, after the clerk of the court enters default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter default judgment."  *Id.*

#### 2.  Liability

"Under the case law interpreting Rule 55(b), the default establishes a defendant's liability . . . as long as the complaint has stated a valid cause of action."  *Lab'ys Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-5980 (RA) (JLC), 2013 WL 5977440, at *4 (S.D.N.Y. Nov. 12, 2013) (alterations omitted) (quoting *Kuruwa v.*

*Meyers*, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011)), *adopted by* 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014); *Nat'l Photo Grp., LLC v. Bigstar Entm't, Inc.*, No. 13-CV-5467 (VSB) (JLC), 2014 WL 1396543, at *2 (S.D.N.Y. Apr. 11, 2014) ("A default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability." (citation omitted)).

### a.  Liability Standard for ADA Claim

"For the Court to adjudicate this matter, [a] [p]laintiff must first establish that [s]he has standing pursuant to Article III of the Constitution." *Gannon v. JBJ Holdings LLC*, No. 22-CV-1674 (LJL), 2022 WL 6698222, at *2 (S.D.N.Y. Oct. 11, 2022) (considering, *sua sponte*, plaintiff's standing at outset of deciding motion for default judgment of ADA claims (quoting *Thorne v. Bos. Mkt. Corp.*, 469 F. Supp. 3d 130, 135 (S.D.N.Y. 2020))).

The Second Circuit has held that in order to establish standing in the ADA context, a plaintiff must satisfy three requirements: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)).

In order to satisfy the third factor, it is not sufficient simply to plead the "magic words" that the plaintiff "intends to return"; rather, the plaintiff must

plausibly allege "a real and immediate threat of future injury." *Id.* at 74–75 (citation omitted). The "material risk of future harm" must be "sufficiently imminent and substantial." *Id.* at 72 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021)). In *Kreisler*, the Second Circuit found that the plaintiff, who lived within several blocks of the defendant's diner, regularly passed by the diner, and often frequented other diners in the neighborhood, had satisfied that requirement. 731 F.3d at 188. In contrast, the plaintiffs in *Calcano* failed to demonstrate standing. The Circuit characterized the *Calcano* plaintiffs' allegations that they resided "in close proximity" to the defendants' businesses, that they had been customers "on prior occasions," and that they "intend[ed] to immediately purchase at least one store gift card" at the businesses once barriers to access had been removed as "threadbare assertions" that were "conclusory and [did] not raise a reasonable inference of injury." 36 F.4th at 76.

Title III of the ADA prohibits discrimination "against [any individual] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Relevant to this case, the ADA includes "grocery store" in its definition of "public accommodation." 42 U.S.C. § 12181(7)(E).

In a well-pleaded complaint under the ADA, a plaintiff who has standing must allege "(1) that he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that

7

the defendants discriminated against the plaintiff within the meaning of the ADA."
*Brown v. 3700 Deli & Grocery, Inc.*, No. 19-CV-7160 (ALC), 2021 WL 289349, at *2
(S.D.N.Y. Jan. 27, 2021) (internal quotation marks omitted) (quoting *Roberts v.
Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)). "With respect to the last
element [of a well-pleaded ADA complaint], discrimination includes 'a failure to
remove architectural barriers . . . in existing facilities . . . where such removal is
readily achievable.'" *Id.* (quoting *Pierre v. Nine One Two Corp.*, No. 19-CV-3326
(NGG) (SMG), 2020 U.S. Dist. LEXIS 95658, at *4 (E.D.N.Y. May 29, 2020) (citing
42 U.S.C. § 12182(b)(2)(A)(iv))).

### b. Liability Standard for State and City Claims

"[A] [p]laintiff's New York State and City claims are "governed by the same
standing requirements as the ADA." *Gannon*, 2022 WL 6698222, at *3 (quoting
*Mendez v. Apple Inc.*, No. 18-CV-7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y.
Mar. 28, 2019)). Similarly, in determining liability, "claim[s] for disability
discrimination under [the State] HRL and New York [State] Civil Rights Law [are]
governed by the same legal standards as the ADA." *Ross v. Royal Pizza Cafe Corp.*,
No. 17-CV-6294 (FB) (RML), 2018 WL 6313208, at *4 (E.D.N.Y. Aug. 1, 2018),
*adopted by* 2018 WL 6313182 (Dec. 3, 2018) (citing *Graves v. Finch Pruyn & Co.*,
457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under
New York State Human Rights Law is governed by the same legal standards as
govern federal ADA claims." (internal citations omitted)); *Panzica v. Mas-Maz, Inc.*,
No. 05-CV-2595 (ARL), 2007 WL 1732123 at *2 n.1 (E.D.N.Y. June 11, 2007) (claims

8

arising under [State] HRL and New York [State] Civil Rights Law "are governed by the same legal standards as federal ADA claims." (quoting *Samper v. Univ. of Rochester*, 535 N.Y.S.2d 281 (4th Dep't 1988))).  The standard for a NYCHRL claim has the same floor for liability as an ADA claim and a NYSHRL claim.  *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (both the NYCHRL and the NYSHRL are coextensive with their "federal counterparts" in establishing a "floor below which the City's Human Rights law cannot fall" (emphasis and citation omitted)).  Indeed, a claim under the NYCHRL "goes beyond those of counterpart state or federal civil rights laws, such that if a plaintiff can allege an ADA or NYSHRL violation, [s]he has also alleged a claim under the NYCHRL." *Florez v. Mister Cangrejo NY Corp.,* No. 20-CV-4745 (AMD) (CLP), 2022 WL 837490, at *3 (E.D.N.Y. Mar. 1, 2022), *adopted by* 2022 WL 837056 (Mar. 21, 2022).

### 3. Damages

Unlike in determining a defaulting defendant's liability, the Court does not simply accept a plaintiff's allegations as put forth in the complaint when determining damages: "in contrast to allegations concerning liability, allegations pertaining to damages are not deemed admitted." *Nat'l Photo Grp., LLC*, 2014 WL 1396543, at *2 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009)); *Campbell v. Bank of N.Y. Tr. Co., N.A.*, No. 11-CV-1588 (CS) (PED), 2012 WL 2952852, at *3 (S.D.N.Y. May 8, 2012) ("When a defendant defaults, the court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages."), *adopted by* 2012 WL 2953967 (July 18, 2012).  Rather,

"a plaintiff must submit sufficient evidence, in the form of detailed affidavits and other documentary materials . . . to enable the district court to 'establish damages with reasonable certainty.'" *Nat'l Photo Grp., LLC*, 2014 WL 1396543, at *2 (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). "Courts have interpreted this to mean that, even when the defendant defaults and is not present to object, damages must be based on admissible evidence." *Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016) (alteration omitted) (quoting *House v. Kent Worldwide Mach. Works, Inc.*, 359 Fed. App'x 206, 207 (2d Cir. 2010)), *adopted by* 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016).

A damages hearing, while authorized by Rule 55(b)(2), is not mandatory. *Maximum Metal Mfrs., Inc.*, 2015 WL 5771853, at *4; *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)). As such, "a hearing is unnecessary so long as (i) the Court has determined the proper rule for calculating damages, and (ii) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment[.]" *TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09-CV-6215 (GBD) (FM), 2012 WL

760168, at *1 (S.D.N.Y. Feb. 23, 2012) (citations omitted), *adopted by* 2012 WL 1948816 (S.D.N.Y. May 30, 2012).  Here, the Court concludes that Norman's documentary submissions constitute a "sufficient basis from which to evaluate the fairness" of the relief requested, and no hearing is necessary.  *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

### B.  Analysis

#### 1. The Court Should Grant Norman's Motion for Default Judgment

As a threshold matter, Norman has standing under the ADA, meeting all three injury elements the *Calcano* court laid out:  "(1) [She] [has] alleged past injury under the ADA," 36 F.4th at 74, alleging that "[s]ince July 2021 [she] "ha[s] visited . . . [the deli] multiple times" but was "prevented . . . from entering" due to the alleged architectural barriers, Am. Compl. ¶¶ 35–36; "(2) it was reasonable to infer that the discriminatory treatment would continue," 36 F.4th at 74, as "[t]o date, [Three In One] has failed to remove the architectural barriers," Am. Compl. ¶ 44; and "(3) it [is] reasonable to infer, based on the past frequency of [her] visits and the proximity of [Three In One's] [deli] to [Norman's] home, that [she] intend[s] to return to the subject location," 36 F.4th at 74, as Norman alleges that she lives "less than six blocks from" the deli and "has the intention to return . . . once it becomes readily accessible . . . and usable." Am. Compl. ¶¶ 42, 46.  Thus, considered together, Norman alleges sufficient facts to establish standing.

Prior to moving for default judgment, on September 28, 2023, Norman submitted a declaration attesting that Three In One had been issued an amended

11

summons.  Declaration in Support of Plaintiff's Request for Entry of Default dated September 28, 2023, ¶ 9.  Dkt. No. 81.  The following day, the Clerk entered a certificate of default as to Three In One.  Dkt. No. 82.  Three In One has failed to appear, even after Norman gave it notice of her motion for default judgment.  *See* Dkt. No. 102 (Norman's Certificate of Service).  Thus, as Norman has standing under the ADA and has met the two-step requirement for obtaining a default judgment against a non-responsive defendant, her motion for default judgment should be granted.

### 2.  Liability

Norman has sufficiently pled a cause of action under Title III of the ADA against Three In One, and thus it should be found liable.  She has established that she is disabled under the ADA, as she is "paralyzed and cannot walk . . . [and] [a]s a result, she uses a wheelchair for mobility."  Am. Compl. ¶ 5; *see* 42 U.S.C. § 12102(1)(A); *Brown*, 2021 WL 289349 at *2.  She has also sufficiently alleged that Three In One "owns or operates" the deli in question, which is a public accommodation under the ADA.  Am. Compl. ¶ 31; *see* 42 U.S.C. § 12181(7)(E); *Brown*, 2021 WL 289349 at *2.  Finally, she has sufficiently alleged that Three In One has discriminated against her within the meaning of the ADA, as it has "failed to remove the [asserted] architectural barriers" from the deli, the removal of which is "readily available."  Am. Compl. ¶¶ 43–44; *see Brown*, 2021 WL 289349, at *2 (quoting *Pierre*, 2020 U.S. Dist. LEXIS 95658, at *4).

Specifically, the architectural barriers she alleges are (1) an entrance ramp

"less than 48 inches long" that is too steep for the eight-inch rise of the doorway, Am. Compl. ¶ 36(a)–(d); *see* 36 C.F.R. Pt. 1191, App. D ("ADAAG") § 404.2 (setting maximum slope requirements for ramps); (2) the lack of a level landing abutting the ramp and entryway to provide maneuvering clearance, Am. Compl. ¶ 36(e), (g)–(h); *see* ADAAG §§ 404.2.4.1, 405.7(2) (requiring landings and maneuvering clearance); and (3) a "main entrance door [that] closes" in "two seconds and does not provide sufficient time to enter." Am. Compl. ¶ 36(i)–(j); *see* ADAAG § 404.2.8.1. She also alleges several violations related to the inaccessibility of the entrance due to these barriers. *See* Am. Compl. ¶ 36(k)–(n) (citations omitted).

As these allegations are sufficient to establish liability under the ADA, Three In One should also be deemed liable under the NYSHRL, NYSCRL, and NYCHRL. *See, e.g., Ross*, 2018 WL 6313208, at *4; *Loeffler*, 582 F.3d at 278.

### 3. Relief

#### a. Injunctive Relief

Because Three In One has violated Title III of the ADA, Norman is entitled to "injunctive relief . . . includ[ing] an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2). Accordingly, a judgment entered against Three In One should require that it make the necessary accessibility alterations to the deli to remove the architectural barriers Norman alleges. *See, e.g., Rutledge v. Haru Inc.*, No. 20-CV-7641 (AJN), 2021 WL 4429328, at *2 (S.D.N.Y. Sept. 27, 2021) (granting request for injunctive relief and ordering defendants "to take all necessary steps to bring their

13

public accommodation into compliance with the ADA and its implementing regulations"). In many cases in which an injunction is imposed after a default in an ADA case, courts require defendants to submit a compliance plan within a prescribed period of time. *See, e.g., Florez*, 2022 WL 837490, at \*5 (citing cases); *Gannon v. 162 E. Broadway* LLC, No. 22-CV-699 (LGS) (RWL), 2022 WL 4085830, at \*5–6 (S.D.N.Y. Aug. 25, 2022) (requiring submission of architectural plan to rectify barriers and bring facility's means of access into ADA compliance), *adopted by* 2022 WL 5197278 (Oct. 5, 2022). Thus, to ensure compliance it is recommended that the injunction (1) require Three In One to submit to plaintiff's counsel an architectural plan that remedies the ADA violations identified in the amended complaint within 60 days of any order adopting this Report & Recommendation; (2) grant plaintiff 30 days from receipt of defendant's plans to consent or to seek further relief from the Court; and (3) direct defendant to make the necessary alterations within 60 days of plaintiff's consent or any ruling on plaintiff's request for further relief. *See, e.g., Cox v. Anjin LLC*, No. 19-CV-4315 (GBD) (SLC), 2020 WL 5027864, at \*7 (S.D.N.Y. July 24, 2020) (recommending such relief), *adopted by* 2020 WL 5018255 (Aug. 25, 2020).

### b. Damages

Claims arising under Title III of the ADA are not eligible for monetary damages. *See Calcano*, 36 F.4th at 79 n.1 (Lohier, J., concurring) (citing 42 U.S.C. § 12188(a)(1)). Therefore, damages must be determined under the remaining State and City Human Rights Law claims, as well as the NYSCRL claim. *See, e.g.,*

14

*Phillips v. Pizza*, No. 17-CV-6112 (JPO), 2018 WL 2192189, at \*2 (S.D.N.Y. May 14, 2018); *Florez*, 2022 WL 837490, at \*5 (citing *Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592 (RJS), 2012 WL 3961304, at \*14 (S.D.N.Y. Sept. 11, 2012), *aff'd*, 731 F.3d 184 (2d Cir. 2013)).

Norman seeks $10,000 in compensatory damages for her pain and suffering. Pl. Mem. at 12. "The New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage other than what a decent and reasonable individual would suffer when faced with such ignorant behavior." *Kreisler*, 2012 WL 3961304, at \*14 (internal quotation marks omitted). Similarly, "[t]he New York Court of Appeals has held that, in determining damages under the state human rights law, '[b]eyond the fact of mental anguish caused by discriminatory conduct, there must be some evidence of the magnitude of the injury, to assure that the Commissioner's damage award is neither punitive nor arbitrary.'" *Id.* (quoting *In re N.Y.C. Transit Auth. v. State Division of Human Rights*, 78 NY.2d 207, 217 (N.Y. 1991)).

"[P]laintiff has not alleged that Defendants engaged in the sort of extreme conduct — such as statements expressly indicating that plaintiff would not be served on the basis of his disability or a scenario in which the defendant refused to remove barriers from the plaintiff's home — that warrant higher compensatory damages." *Florez,* 2022 WL 837490, at \*5 (citing *Kreisler*, 2012 WL 3961304, at \*14–15 (collecting cases)). Norman should accordingly be awarded compensatory damages of $1,000. *See, e.g., id.* at \*6 (awarding $1,000 in compensatory

damages); *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098, at *4 (S.D.N.Y. Dec. 19, 2019) (same); *Ross v. Royal Pizza Café Corp.*, No. 17-CV-6294 (FB) (RML), 2018 WL 6313208, at *5 (E.D.N.Y. Aug. 1, 2018) (same), *adopted by* 2018 WL 6313182 (Dec. 3, 2018); *Kreisler*, 2012 WL 3961304, at *15 (same).

Norman also seeks $1,500 in statutory damages under NYSCRL § 40-d, "which 'establishes a private cause of action to recover a statutory penalty against those who' discriminate against an individual on the basis of his or her disability." *Florez,* 2022 WL 837490, at *6 (quoting *Feacher v. Intercont'l Hotels Grp.*, 563 F. Supp. 2d 389, 407 (N.D.N.Y. 2008) (citing NYSCRL § 40)); Pl. Mem. at 11.  The NYSCRL provides for statutory damages of between $100 and $500 per violation. NYSCRL § 40-d.  To recover statutory damages, a plaintiff must serve notice upon the state attorney general "[a]t or before the commencement of any action."  *Id.* Norman has provided the required notice.  *See* Dkt. No. 88-1.

While Norman lists 15 individual barriers to entry, they fundamentally concern three problems: the existing ramp is inadequate, as it is too steep and lacks handrails; there is not sufficient space at the top of the ramp to turn a wheelchair to enter the door; and the door itself closes too quickly for a wheelchair-bound individual to enter.  Am. Compl. ¶ 36; Pl. Mem. at 11.  Norman, who herself distills her list into these three elements, seeks $500 in damages for each violation.  *Id.* However, courts in this Circuit have generally awarded a single instance of $500 in statutory damages in ADA cases where multiple barriers to access exist.  *See, e.g.,*

16

*Gannon*, 2022 WL 4085830, at *4 ($500 in statutory damages where plaintiff alleged multiple access violations); *Florez,* 2022 WL 837490, at *6 (same); *Grinblat v. Apna Food & Oil Corp.*, No. 19-CV-6746 (EK) (LB), 2020 WL 7481508, at *6 (E.D.N.Y. Aug. 26, 2020), *adopted by* 2020 WL 7481327 (Dec. 18, 2020) (same). Norman does not present any reason to depart from this practice, and she should accordingly be awarded $500 in statutory damages.

### c. Attorney's Fees

Norman's counsel, James Bahamonde, Esq., seeks an award of $37,452.40 in attorney's fees for 70.23 hours of work.  Declaration of James Bahamonde dated October 2, 2023 ("Bahamonde Decl.") ¶ 24, Dkt. No. 88.  "Both the ADA and [the NYCHRL] allow a prevailing party to recover reasonable attorneys' fees," including litigation costs and expenses.  *Rutledge*, 2021 WL 4429328, at *3 (citing 42 U.S.C. § 12205 and N.Y. Admin. Code § 8-502(f)); *see Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997) (noting that plaintiff could have recovered attorney's fees under the ADA, but not under the NYSHRL).  An award of attorney's fees under both the ADA and the New York City Administrative Code is discretionary. *See* 42 U.S.C. § 12205; N.Y. Admin. Code § 8-502(f).

There is a two-part process for determining the appropriateness of requested attorney's fees.  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166–67 (2d Cir. 2011). First, a court must determine the "reasonable hourly rate" for the attorney.  *Id.*  In determining that rate, a court should consider the *Johnson* factors.  *Lilly v. City of New York,* 934 F.3d 222, 230 (2d Cir. 2019).  The *Johnson* factors are:

17

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 716 (5th Cir. 1974)). In evaluating an hourly rate, courts consider "market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The fee applicant bears the burden of demonstrating that the requested hourly rate is reasonable and in line with prevailing rates in the community. *Adams v. N.Y. State Educ. Dep't*, 630 F. Supp. 2d 333, 348 (S.D.N.Y. 2009).

Second, the hourly rate is then multiplied by the reasonable number of hours worked to calculate a "presumptively reasonable fee." *Id.* at 166.

Bahamonde's requested rate of $545 per hour (Bahamonde Decl. ¶ 22) is above that which is regularly awarded by courts in this Circuit for comparable work. *See, e.g., Ortiz v. City of New York*, No. 15-CV-2206 (DLC), 2020 WL 755878, at *5 (S.D.N.Y. Feb. 14, 2020) (collecting cases in which experienced civil rights attorneys awarded rates between $300–$450 per hour), *aff'd in part, rev'd in part and remanded,* 843 F. App'x 355 (2d Cir. 2021).

18

An analysis of the *Johnson* factors does not justify a departure from precedent in this case. As Norman acknowledges, her case was "fairly straightforward" and did not present "new or difficult questions." Pl. Mem. at 16. The parties participated in a settlement conference (Dkt. No. 36) and conducted some written discovery (Bahamonde Decl. ¶ 35), but they did not engage in motion practice (other than the instant motion). Norman does not argue that there were any time limitations involved in the case. While Bahamonde and Norman did have an hourly fee agreement which provided for a $540 per hour rate, that is the only *Johnson* factor weighing in favor of the high rate requested. Bahamonde Decl. ¶ 20.

As counsel for Norman has more than 20 years of experience, *see* Bahamonde Decl. ¶ 29, a rate at the higher end of the range for experienced civil rights attorneys is appropriate. Accordingly, Bahamonde should be assigned a rate of $400 per hour. S*ee, e.g., Jaquez v. Brilliant Home Tech., Inc.,* No. 20-CV-9855 (KPF) (SDA), 2022 WL 951108, at *1 (S.D.N.Y. Mar. 30, 2022) (awarding hourly rate of $400 to attorney with 10 years of experience in ADA default case); *Winegard v. Crain Commc'ns, Inc.*, No. 20-CV-01509 (AJN), 2021 WL 1198960, at *4 (S.D.N.Y. Mar. 30, 2021) (awarding requested hourly rate of $385 to attorney with 35 years of experience in ADA default case and noting that "the prevailing rate in the Southern District for ADA cases is around $400").

A higher hourly rate would not be appropriate, considering the straightforward nature of this case. *See Indep. Project, Inc. v. Ventresca Bros. Constr.,* 397 F. Supp. 3d 482, 496 (S.D.N.Y. 2019) ("[A]wards exceeding $400 per

19

hour are only warranted in unusually difficult and complex cases." (citation omitted)).[1]

The Court has reviewed the timesheets provided by Norman and finds that Bahamonde billed a reasonable amount of time for the actions he took in this case. Bahamonde Decl. Ex. 4.  Accordingly, he should be awarded fees for the full 70.23 hours requested.  At the proposed rate of $400, his total fees award should be $28,092.

### d.  Costs

Both federal and local law allows Norman as the prevailing party to recover the costs she incurred during litigation.  *See* 42 U.S.C. § 12205; N.Y.C. Admin. Code § 8-502(f).  She seeks $623.04 in costs, consisting of the $402 filing fee, $140 in service expenses, and the remainder in travel expenses.  Bahamonde Decl. ¶¶ 25–27 & Ex. 4.  The Court's summary of expenses, based on the expense sheet provided, is $597.66, which Norman should therefore be awarded.[2]

---

[1] Notably, in a 2015 decision, Bahamonde was awarded a rate of $350 per hour, *Hines v. 1025 Fifth Avenue*, No. 14-CV-3661 (SAS), 2015 WL 4006126, at *5 (S.D.N.Y. June 30, 2015), and in 2013 he was awarded a rate of $325 per hour, *Shariff v. Alsaydi*, No. 11-CV-6377 (FB) (SMG), 2013 WL 4432218, at *5 (E.D.N.Y. Aug. 19, 2013).  The Court has not found more recent opinions that consider Bahamonde's rates, and he has not provided any in his motion papers.

[2] There are some minor discrepancies between the expenses claimed by Norman, $623.04, and the records provided.  The same 60.8-mile drive to inspect the subject premises, conducted on both October 13, 2021, and December 9, 2021, was billed without explanation at a different rate.  Bahamonde Decl., Ex. 4 at 3, 7.  For both instances, the notes state that the bill amount was reduced 50 percent as the attorney while travelling also worked on another case, but it appears this was only applied in the latter instance.  *Id.*  The Court could not identify the cause of the remaining difference, $4.10, between the requested amount, $623.04, and the

### III.  CONCLUSION

For the reasons stated herein, the Court should grant Norman's motion for default judgment, award Norman damages in the amount of $1,500, and attorney's fees and costs in the amount of $28,689.66.  It should also grant injunctive relief, and direct Three In One to modify its premises to comply with the ADA.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  *See* Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within fourteen (14) days after being served.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jennifer L. Rochon and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rochon.

---

Court's total, $597.66.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: February 8, 2024
     New York, New York

                                                  _____
                                          JAMES L. COTT
                                          United States Magistrate Judge